IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION

FILED

March 1, 1996

Cecil Crowson, Jr.
Appellate Court Clerk

DONALD L. TATUM and ) HAMILTON COUNTY
DOROTHY R. TATUM ) 03A01-9507-CH-00219
)
    Plaintiffs-Appellees )
)
) HON. HOWELL N. PEOPLES,
v. ) CHANCELLOR
)
)
VERTIS J. WORSHAM )
)
    Defendant, )
    Cross-Defendant/Appellant )
)
    and )
)
FREDA JOHNSON MICHEL )
)
    Defendant, )
    Cross-Plaintiff/Appellee ) AFFIRMED AND REMANDED


WILLIAM G. SCHWALL OF CHATTANOOGA FOR APPELLANT

MICHAEL A. ANDERSON OF CHATTANOOGA FOR DONALD L. TATUM and
DOROTHY R. TATUM

W. FRANK BROWN, III, OF CHATTANOOGA FOR FREDA JOHNSON MICHEL


O P I N I O N


Goddard, P.J.


    This case originated from a complaint by Donald L.
Tatum and Dorothy R. Tatum against Vertis J. Worsham for specific
performance of a land sale agreement and damages. Mr. and Mrs.

Tatum amended their complaint to join Freda Johnson Michel, a second mortgage holder of the subject property. Thereafter, Ms. Michel filed a cross-claim against Ms. Worsham, principally seeking a determination of the balance owing on the second mortgage which was in dispute.

Ms. Worsham appeals a judgment of the Hamilton County Chancery Court granting specific performance of a land sale contract and damages resulting from the breach of that contract in favor of Mr. and Mrs. Tatum. Ms. Worsham also appeals a decree determining the balance owed on the second mortgage and granting her attorney's fees.

The following is a summary of the Chancellor's findings of fact which are accompanied by a presumption of correctness. Rule 13(d) of the Tennessee Rules of Appellate Procedure.

Ms. Worsham acquired the property that is the subject of this dispute from Freda Johnson (now Freda Michel) in 1993. At that time, Ms. Michel, who now resides in Florida, held a second mortgage on the property. On November 13, 1993, Ms. Worsham entered into a Real Estate Sales Agreement with Mr. and Mrs. Tatum. The Agreement provided in pertinent part the following:

> 4.  Should we wrongfully fail or refuse to carry out the terms of this agreement, the Sellers shall have the right (1) to elect to declare this contract cancelled, in which event the amount deposited may be retained by

2

them as liquidated damages, or (2) elect to affirm this contract and enforce its specific performance or recover damages for its breach. In this case, the deposit shall be retained to apply on the sale price or on the damages recovered.

9. Should this offer be accepted by the sellers, the parties hereto agree to close the purchase 12-27-93.

15. In event of the default of either party hereto, and litigation ensues, a reasonable attorney's fee shall be included in the damages of the non-defaulting party, recoverable together with any court costs.

The contract also provided that Ms. Worsham would make repairs required by an FHA appraisal and supply a wood infestation clearance letter.

The Tatums were unable to obtain the necessary financing by December 27, 1993. Thus, the closing did not take place on that date. But the parties negotiated further and at least implicitly agreed to close the sale on January 28, 1994. The Tatums attended the closing on the proper date, as did Ms. Worsham. Ms. Worsham asserted that the only reason she attended was because she was threatened with a lawsuit by counsel for the Tatums if she failed to attend.

At the closing, Ms. Worsham refused to close the sale because there was a dispute as to the amount she owed on the mortgage held by Ms. Michel. Ms. Michel was residing in Florida and did not attend the closing.

Thereafter, the Tatums brought this suit against Ms. Worsham, requesting the Trial Court to order specific performance

3

of their contract.   Ms. Worsham filed a cross-claim against Ms. Michel seeking a determination of the amount owed on the mortgage held by Ms. Michel.   Ms. Michel counter-claimed.

The Chancellor found that Ms. Worsham had acted unreasonably by failing to close the sale and was in breach of their agreement.   Specifically, the Chancellor stated, "the appropriate thing to do and the proper thing to do was to go forward with the closing and escrow any disputed amount so that at some time later Ms. Worsham and Ms. Michel can resolve whatever differences they have either between them or through the appropriate action."   The Chancellor granted specific performance of the contract, as well as monetary damages, in favor of the Tatums and ordered that a closing take place on July 12, 1994. The Chancellor also directed that a determination be made as to the value of Ms. Michel's mortgage and awarded attorney's fees to Ms. Michel.   As to the disputed portion of the debt, the Chancellor ordered that they be placed in escrow until the Court made a determination of the amount owed.

Ms. Worsham raises seven issues on appeal, four as to Mr. and Mrs. Tatum and three as to Ms. Michel.   We will address each in turn.

Ms. Worsham first argues that the Trial Court erred in failing to find that the Tatum's had breached the land sales contract by being unable to close the contract on December 27,

4

1993, or, alternatively, that the contract had expired on that date. Essentially, Ms. Worsham is arguing that time was of the essence of the contract, and by failing to be able to close on the date specified in the contract, the Tatums terminated the contract.

The Chancellor found that time was not specifically made of the essence by the terms of the agreement. He reasoned that although the agreement provided a date for closing, it did not specify what would happen if that the sale was not closed by that date.

We agree with the Chancellor that time was not of the essence of this contract. It is the law in Tennessee that time is not of the essence of the contract unless specifically made of the essence by the language of the contract or inferred as such by the intent of the parties as expressed in their contract. Commerce Street Co. v. Goodyear Tire & Rubber Co., 31 Tenn. App. 314, 215 S.W.2d 4 (1948). Ms. Worsham argues that the time of performance was fixed by the contract at December 27, 1993. Given the fact that the parties continued to negotiate the sale after that date and the fact that the contract did not state that the contract would terminate if the sale was not closed by that date, we agree with the Chancellor and are unable to conclude that time was made of the essence by the parties in their contract or by their actions.

5

Next, Ms. Worsham argues that the Trial Court erred by ruling that she had breached the contract by refusing to close the sale on January 28, 1994. The Chancellor found that Ms. Worsham had acted unreasonably when she refused to close because the amount due on the Michel mortgage was disputed. The Chancellor stated, as already noted, that the appropriate thing to do would be to place the disputed funds in escrow and continue with the closing. This position was supported by the testimony of the closing agent present when the parties were to close on January 28.

Next, Ms. Worsham asserts that for various reasons, specific performance should not have been granted in this case. First, Ms. Worsham argues that the property at issue was not unique and that an award of damages would have been an adequate remedy. In doing so Ms. Worsham has offered proof that there was other properties in the area of the subject property that were of similar value and which had similar characteristics.

We believe that Ms. Worsham misconstrues the law of specific performance. "[S]pecific performance is regarded as appropriate when dealing with contracts for the conveyance of real property because real property is unique, and more often than not, an award of damages is simply not an adequate remedy." GRW Enterprises, Inc. v. Davis, 797 S.W.2d 606 (Tenn. App. 1990). As evident from her attempts to prove that the subject property is not unique, Ms. Worsham does not realize that by its very

6

nature, real property is unique. She points to no example of a Tennessee court finding, explicitly or implicitly, that a piece of real property was not unique. We are not prepared to make such a finding regarding the property that is the subject of this dispute.

The Chancellor made specific findings that this property was indeed unique as to the Tatums because it was located across the street from a golf course where Mr. Tatum plays regularly and was reasonably priced.

However, we do not hold that because real property is unique specific performance is always an available remedy. Ms. Worsham correctly cites authority for the rule that specific performance should not be granted where it would produce a harsh, inequitable, or oppressive result. Colonial Funeral Home, Inc. v. Harold B. Gilmore, et al., an unpublished opinion of this Court, filed in Nashville on September 23, 1994. In *Colonial Funeral Home*, this Court denied specific performance of a contract for the sale of real property where an elderly seller, not represented by counsel, granted an interest-free, unsecured, nonrecourse promissory note to the purchaser to finance the sale. Ms. Worsham points to no evidence that the result would be harsh, oppressive or inequitable should specific performance be granted. Thus, we hold that the Chancellor ruled correctly in finding specific performance to be the appropriate remedy in the present situation.

7

Ms. Worsham also asserts that the Chancellor erred in awarding monetary damages to the Tatums. The Chancellor found that because the sale did not close, the Tatums will be forced to pay their mortgage at a rate of eight and one-half percent over 30 years instead of seven and one-half percent over 30 years. The Chancellor awarded the Tatums the present value of this differential. He also awarded them various expenses associated with renewal of their loan commitment which would not have been incurred had Ms. Worsham closed the sale as we have found that she was obligated under contract to do. The Chancellor also awarded attorney's fees as provided under the contract.

Tennessee courts have awarded monetary damages along with the specific performance of a real estate contract.

> A decree for specific performance seldom brings about performance within the time that the contract requires. In this respect, such a decree is nearly always a decree for less than exact and complete performance. For the partial breach involved in the delay or in other existing non-performance, money damages will be awarded along with the decree for specific performance.

Bush v. Cathey, 598 S.W.2d 777, 783 (Tenn. App. 1979). The additional financing costs and attorney's fees incurred by the Tatums were the normal and foreseeable consequence of Ms. Worsham's breach.

Ms. Worsham argues that the Tatums had a duty to mitigate their damages by finding another house. Under the law

8

of Tennessee, a party has the duty to use reasonable efforts to mitigate damages. In light of the fact that we have held that real property is unique and because we have found that the Tatums are entitled to specific performance, it would be unreasonable to require the Tatums to find another house to mitigate their damages.

Ms. Worsham argues that the Chancellor erred in failing to grant a judgment against Ms. Michel. Ms. Worsham argues that Ms. Michel and her attorney agreed to a settlement of the amount owed Ms. Michel and thereafter demanded a higher amount. Ms. Worsham thus argues that Ms. Michel should be penalized under T.C.A. 66-25-102, which grants a penalty of $100 for arbitrarily and unreasonably failing to release a debt secured by real property.

Ms. Worsham alone submitted evidence at trial as to the asserted agreement. She admitted that it was not reduced to writing. By finding for Ms. Michel, the Chancellor, by implication, discredited Ms. Worsham's testimony or felt that the agreement required a writing. Ms. Worsham offers no factual basis for us to overturn the finding of the Chancellor on this issue and we are not inclined to do so.

Ms Worsham argues that the Chancellor erred in awarding Ms. Michel her attorney's fees as provided for in both the note and the deed of trust. Ms. Worsham argues that attorney's fees

should be limited to fees incurred from protection of the security. However, the note allows recovery for the collection of moneys due under the note. The crux of the dispute between Ms. Worsham and Ms. Michel was the amount due on the note. Attorney's fees are a discretionary remedy and we are not inclined to overturn the findings of the Chancellor.

Finally, Ms. Worsham argues that the Chancellor erred in admitting into evidence a letter from Ms. Michel's attorney in violation of the rule against hearsay. Rule 801 of the Tennessee Rules of Evidence. The letter was objected to at trial by counsel for Ms. Worsham and the objection was sustained. However, the record shows that the letter was admitted. There has been no showing that the letter was relied on by the Chancellor. Thus, the evidence had no material bearing on the issues decided and was thus harmless error.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for such further proceedings as may be necessary and collection of costs below. Costs of appeal are adjudged against Ms. Worsham.

_____
Houston M. Goddard, P.J.

CONCUR:

_____
Don T. McMurray, J.

10

_____
Charles D. Susano, Jr., J.